UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS                                            NO. 11-159

MARK TITUS                                        SECTION "B"(1)


                            ORDER AND REASONS

     Before the Court is Defendant Mark Titus's "Motion to Recuse District Judge from Post-Conviction Relief Proceedings" (Rec. Doc. 251), seeking the Court's recusal pursuant to 28 U.S.C. § 455(a) from Defendant's presently pending motion for post-conviction relief (Rec. Doc. 249). For the reasons that follow, **IT IS ORDERED** that Defendant's motion is **DENIED**.

I. FACTS AND PROCEDURAL HISTORY

     The Court assumes familiarity with the facts of the instant case, the details of which may be ascertained from the record (*See, e.g.*, Rec. Doc. 249-1 at 2). In brief, Mark Titus was sentenced on October 10, 2012, to a term of 60 months imprisonment, after pleading guilty to a charge of Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 371. (Rec. Doc. 72). That plea was entered pursuant to an agreement under which the Government declined to charge Titus with additional offenses in return for his cooperation in an investigation into alleged fraud perpetrated by his brother-in-law, Dominic Fazzio, in connection with the so-called "River Birch Probe." *See United*

                                    1

*States v. Fazzio*, Civil Action No. 11-157(C) (E.D La. 2011). Issues which are the subject of Titus's motion for post-conviction relief (and need not be addressed in detail here) exist as to whether, as part of this agreement, the Government obligated itself not to pursue forfeiture of property owned by Titus. (Rec. Doc. 249-1). Ultimately, Titus's conviction and sentence were affirmed on appeal to the United States Court of Appeals for the Fifth Circuit on November 13, 2013. (Rec. Doc. 194). Rehearing was denied on January 3, 2014. (Rec. Doc. 249-1 at 10). Titus did not petition the United States Supreme Court for certiorari, causing his judgment of conviction to become final on April 3, 2014. (Rec. Doc. 249-1 at 10). Thereafter, on February 23, 2015, within the one-year period allowed for doing so, Titus filed an application for post-conviction relief pursuant to 28 U.S.C. § 2255. In that application, Titus alleges ineffective assistance on the part of his retained trial counsel, James Ardoin, relating to the forfeiture provisions of his plea agreement and Ardoin's alleged failure to timely move to withdraw Titus's plea when it became clear that the Government intended, after all, to pursue forfeiture of Titus's assets. Titus now moves this Court to recuse from the post-conviction proceedings, alleging that intrajudicial comments pertaining to Titus's credibility in his sentencing proceedings would cause a reasonable observer to question the Court's

2

partiality for purposes of the post-conviction proceedings, as required for recusal under 28 U.S.C. § 455(a).

**II. CONTENTIONS OF MOVANT**

The grounds for Titus's § 2255 motion are two claims of ineffective assistance of counsel. Titus first argues that his trial counsel, James Ardoin, suffered from an actual conflict of interest in connection with instructions from Titus to move to withdraw his previously entered guilty plea. (Rec. Doc. 249-1 at 10). Titus's strongest argument for withdrawal of the plea was that he would not have pleaded guilty but for oral assurances from Assistant United States Attorneys assigned to the case that the Government did not intend to pursue forfeiture. Ardoin did not bring this issue to the Court's attention until shortly before Titus's sentencing hearing. Titus argues that Ardoin succumbed to personal interest when the issue was raised to the Court by insisting that he himself had only recently been made aware of allegations relating to the Government's assurances and that admitting otherwise would have caused him to expose himself to disciplinary action for misleading the Court, both at hearings and in correspondence with the Court and opposing counsel (of which Titus claims he was not aware). Titus argues evidence reflects that Ardoin was instead aware of the alleged assurances by the Government far earlier than he represented to the Court and that Ardoin's failure to timely raise issues

3

relating thereto led the Court to believe that no such agreement ever existed because it was not credible that Titus (and his private investigator) would have failed to inform counsel of such assurances for an entire year. The details of this claim are set forth in Titus's § 2255 motion. (Rec. Doc. 249).

Titus's second argument pertaining to ineffective assistance is that Ardoin failed to negotiate a favorable application of the forfeiture clause in his plea agreement. (Rec. Doc. 249-1 at 18). According to Titus, he initially voiced concerns about inclusion of such a provision in the agreement, to which Ardoin responded that the provision's failure to identify specific property would afford an opportunity to negotiate favorable application of that term over the course of the ensuing proceedings. (Rec. Doc. 249-1 at 19). Titus alleges however that Ardoin never undertook any such negotiations and further that Ardoin neglected even to inform Titus when the Government filed a Motion for Preliminary Order of Forfeiture on February 15, 2012. (Rec. Doc. 249-1 at 19). The Government moved to amend the notice of forfeiture to identify specific property four days before Titus's sentencing. *Id.* When the Court granted a continuance on a conditional grant of that motion for purposes of allowing the defense to respond, Ardoin failed to respond or oppose the motion, resulting in the Court's granting it and

4

entering an order of forfeiture on November 20, 2012. (Rec. Doc. 249-1 at 20). The order was not appealed.

At Titus's sentencing hearing on October 10, 2012, Ardoin finally raised concerns relating to the alleged assurances by the Government as to the issue of forfeiture and further permitted Titus to address the Court pertaining thereto. It is the Court's comments in response to these developments that form the basis of the instant motion for recusal. Titus argues:

> A reasonable person who observed the proceedings during the October 10, 2012 hearing would believe that the Court firmly believed that Titus was lying about assurances of no-forfeiture from AUSAs Perricone and Mann and was not open to reconsidering its position. The Court repeatedly stated that it did not believe Titus or his investigator, Tim Wilson. 'You want me to believe all this?' the Court asked Titus's lawyer. . . . A few minutes later, the Court asked again, 'And so why should I believe Mr. Wilson, a non-lawyer, is negotiating on behalf of someone that he's not authorized to represent as a lawyer? That sounds ridiculous to me. Why should I believe that?' With regard to the timing of the filing, the Court said:
>
>> I don't fault Ardoin for that. It apparently is something that was recently told to him by his client, concerning some secret plea agreement that his client told him about a year later, as well as an investigator who tells him about this almost a year alter [sic] and says that there was a secret plea agreement where the Government agreed that they would not seek to forfeit the

5

> Defendant's property and as part of a quid pro quo so to speak for his plea of guilty. I don't find that credible because of the late filing as well and [sic] the reasons I've already stated. There is no basis for a delay that long and I don't find credible Mr. Wilson or Mr. Titus in that regard.

(Rec. Doc. 251-1 at 2). Titus further cites an exchange between the Court and Ardoin at the sentencing hearing, where the latter indicated that he intended to put his client on the record making statements pertaining to a claim of actual innocence. Rec. Doc. 251-1 at 3). In response, the Court stated: "I'll give him the shovel," which Titus now argues indicates: "the Court had developed a predisposition to disbelieve Titus based on the representation about the Pericone-Mann assurances." (Rec. Doc. 251-1 at 3).

Titus's § 2255 motion challenges the Court's conclusion that the no-forfeiture representations by the Government were last-minute inventions of which Ardoin was not made aware until a year into his representation of the defendant. Because these arguments may require the Court to re-visit its credibility determinations relating to Titus, he argues the Court should recuse from the instant post-conviction proceedings.

**III. § 455(a) RECUSAL STANDARD**

6

The instant motion to recuse is governed by 28 U.S.C. § 455(a), which provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Such a determination is objective, "so that what matters is not the reality of bias or prejudice but its appearance." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). This objective standard is established with reference to "the well-informed, thoughtful and objective observer, rather than the hypersensitive, cynical, and suspicious person." *Andrada v. Chojnacki*, 338 F.3d 448, 454-55 (5th Cir. 2003)(citing *United States v. Jordan*, 49 F.3d 152, 156 (5th Cir. 1995)). In applying the standard, however, jurisprudence establishes that the origin of a judge's alleged bias is important to a recusal determination. *Andrade*, 338 F.3d at 454-55.

> First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. Almost invariably, they are proper grounds for appeal, not for recusal. Second, opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to,

7

> counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge. They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. U.S.*, 510 U.S. 540, 555, 114 S.Ct. 1147, 127 L.Ed.2d 474 (1994). Further, "[i]t has long been regarded as normal and proper for a judge to sit in the same case upon its remand, and to sit in successive trials involving the same defendant." *Id.* at 551.

Nevertheless, the "right to a fair and impartial trial is fundamental to the litigant; fundamental to the judiciary is the public's confidence in the impartiality of our judges and the proceedings over which they preside . . . . This is the very purpose of 28 U.S.C. § 455(a). . . . The goal of section 455(a) is to avoid even the appearance of impartiality. . . . Put simply, avoiding the appearance of impropriety is as important in developing public confidence in our judicial system as avoiding impropriety itself." *United States v. Jordan*, 49 F.3d 153, 155-56 (5th Cir. 1995).

**IV. DISCUSSION**

At issue presently is the impact of certain intrajudicial statements by the Court at Titus's sentencing on an objective perception of the Court's partiality in the instant matter.

These statements pertain to credibility determinations made by the Court in the course of judicial proceedings and were based on the evidence and argument theretofore presented. As such, they are the proper basis for a recusal motion if they "display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. The Court cannot agree that such is the case. In *Liteky*, *supra*, discussing the impact of the 1974 revisions to § 455 (which revisions added the entirely new catchall provision of § 455(a) to the statute) on the so-called "extrajudicial source doctrine," the Supreme Court went to great lengths to explain:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task.

510 U.S. at 551. "A favorable or unfavorable disposition can . . . deserve to be characterized as 'bias' or 'prejudice' because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment." *Id.* Thus, a pronounced and material difference exists between mere disfavorable disposition toward the credibility of a particular party, developed over the

9

course of litigation, and such a clearly improperly unfavorable disposition so as to form the appropriate basis of a partiality motion.

Conscious of the Court's eminently important and delicate responsibility to preserve public faith in the integrity of the judicial system and process, it nevertheless does not appear that any statements of the Court suggest "an inability to render fair judgment."[1] While Titus's § 2255 petition may require the Court to weigh the credibility of Titus himself as well as any other witnesses and evidence presented in order to support his claims of ineffective assistance of counsel, the Court's statements on the record (which were based on the evidence and argument presented up to that point to the Court in the course of the initial proceedings), do not suggest that the Court would be unable to impartially consider any new evidence that is to be presented within the context of the instant matter.[2] Indeed,

---

[1] The Court finds the authority cited by Titus, *Haines v. Liggett Group*, 975 F.2d 81 (3d Cir. 1992), unpersuasive. This is because, first, the pre-trial statements at issue therein, that: "despite some rising pretenders, the tobacco industry may be the king of concealment and disinformation" (which statements were the subject of considerable national news media attention and made in the context of a trial that was ultimately to be handed over to a jury) were qualitatively different from those presently at issue, and second and most importantly, because of that case's antecedence of the leading Supreme Court case on point, *Liteky v. United States*, 510 U.S. 540 (1994).

[2] The Fifth Circuit has already considered and rejected claims similar to those raised by Defendant herein. In *United States v. Mizell*, the Court, applying *Liteky*, *supra*, explained that the defendant's asserted recusal grounds consisted "of judicial rulings which the district judge was required to make" and that "to the extent that the district judge formed any opinion about [the defendant's] case based on his findings . . . it was a proper and appropriate opinion formed in the course of judicial proceedings, in reliance

Titus's application for post-conviction relief will necessarily require the introduction of evidence not previously presented in his initial prosecution, because his claims would otherwise be procedurally barred. In the event Titus succeeds in establishing by competent evidence the allegations contained in his § 2255 petition and further that such allegations entitle him to relief at law, under *Strickland* and related progeny, no taint from the prior proceedings suggests the Court would be unable to render judgment impartially.[3]

## V. CONCLUSION

Because there has been no showing that the intrajudicial statements of the Court at Titus's sentencing hearing reveal a deep-seated antagonism such that fair judgment would be impossible, **IT IS ORDERED** that Defendant's Motion to Recuse (Rec. Doc. 251) is **DENIED.**

New Orleans, Louisiana, this 27th day of March, 2015.

_____
UNITED STATES DISTRICT JUDGE

---

on information learned during the proceedings." 88 F.3d 288, 300 (5th Cir. 1996).

[3] *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)(Defendant must show: (1) deficient performance by counsel and (2) prejudice).