**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**UNITED STATES OF AMERICA**                    **CRIMINAL ACTION**

**VERSUS**                                                          **NO. 11-159**

**MARK J. TITUS**                                              **SECTION "B"(1)**

<u>**ORDER AND REASONS**</u>

**I.    NATURE OF MOTION AND RELIEF SOUGHT**

Before the Court is Defendant Mark Titus's Motion for Post-Conviction Relief under 28 U.S.C. § 2255. (Rec. Doc. 249). Titus seeks to have his conviction and sentence for Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 371 vacated on two grounds of alleged ineffective assistance of counsel. (See Rec. Doc. 249-1). Titus further requests that the Court hold an evidentiary hearing for purposes of judging the validity of his claims of ineffective assistance. (Rec. Doc. 250). The Government opposes the motion for post-conviction relief. (Rec. Docs. 256). For the reasons that follow, **IT IS ORDERED** that Titus's motions are **DENIED**.

**II. FACTS AND PROCEDURAL HISTORY**

Titus's conviction and sentence are the result of extensive litigation in this section of court spanning the better part of three years; familiarity with the facts and parties is presumed. Briefly, however, Mark Titus was sentenced on October 10, 2012,

1

to a term of 60 months imprisonment, after pleading guilty to a charge of Conspiracy to Commit Mail Fraud in violation of 18 U.S.C. § 371. (Rec. Doc. 72). That plea was entered pursuant to an agreement under which the Government declined to charge Titus with additional offenses in return for his cooperation in an investigation into alleged fraud perpetrated by his brother-in-law, Dominic Fazzio, in connection with the so-called "River Birch Probe." *See United States v. Fazzio*, Civil Action No. 11-157(C) (E.D. La. 2011).

In these post-conviction proceedings, Titus raises two claims of ineffective assistance of counsel. He first argues that his retained trial counsel, James Ardoin, provided constitutionally deficient assistance in connection with Titus's guilty plea. This claim concerns allegations that Assistant United States Attorneys negotiating on behalf of the Government made representations to Titus's original counsel, Paul Villalobos, and a private investigator retained by Titus to assist with the proceedings, Tim Wilson, that the Government did not intend to pursue forfeiture of Titus's assets in the event he pled guilty. Titus claims Ardoin was made aware of these alleged assurances at the time he was retained to represent Titus and further that he knew that the Government's abstention from forfeiture was a motivating factor for Titus to plead guilty.

When the Government subsequently initiated civil forfeiture proceedings, Titus argues Ardoin labored under a conflict of interest while litigating a motion to withdraw Titus's guilty plea, which Ardoin filed shortly before Titus's sentencing hearing. (*See* Rec. Doc. 58). In order to explain the failure to file the motion until that relatively advanced stage of the proceedings, Ardoin argued to the Court that his client had only recently made him aware of the alleged side agreement with the Government. According to Titus, Ardoin's representations concerning late discovery of the side-agreement claim were untrue and caused the Court to disbelieve Titus's allegations, dismissing them as eleventh-hour fabrications. Titus claims effective litigation of the motion to withdraw his plea would have required Ardoin to admit to misleading the Court and breaching his professional responsibilities to his client. Accordingly, Titus argues Ardoin was the subject of a conflict of interest, which resulted in constitutionally deficient representation and prejudice to his client. Titus further argues Ardoin performed deficiently in failing to ensure Wilson's appearance for live testimony at the hearing on the motion to withdraw plea; ostensibly out of fear that Wilson would confirm Ardoin's prior knowledge of the side-agreement claim.

Titus's second ineffective-assistance claim concerns Ardoin's litigation of the civil forfeiture proceedings

themselves. According to Titus, Ardoin failed to timely inform him when the Government moved for a preliminary order of forfeiture and further failed to file a response after the Court granted the defense additional time to oppose the Government's forfeiture motion. For reasons discussed below, these claims are precluded in this phase of the proceedings.

## III. CONTENTIONS OF MOVANT

### A. Litigation of the Motion to Withdraw Guilty Plea

As to his first claim, Titus argues he is able to satisfy both elements of the *Strickland* standard applicable in the Fifth Circuit to ineffective-assistance-of-counsel claims relating to alleged conflicts of interest. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674 (1984); *Beets v. Scott*, 65 F.3d 1258, 1260 (5th Cir. 1995)(en banc). These require Titus to establish: (i) that his counsel's performance fell below an objective standard of reasonableness, and (ii) that he suffered prejudice as a result of this deficient performance (*i.e.,* that the result of the proceedings would have been different but for counsel's unprofessional errors).

As to the first element, Titus argues Ardoin's performance fell below an objective standard of reasonableness when he violated his duty of loyalty by placing his own interests above those of his client. According to Titus, Ardoin's representations to the Court in an October 5th letter, explaining

the circumstances surrounding the filing of the motion to withdraw the plea, made it look as though Titus was lying about the alleged side agreement with the Government. (Rec. Doc. 64-3). Titus further argues Ardoin performed deficiently in failing to seek a continuance of the sentencing hearing, at which the Court set argument on the motion to withdraw plea, when it was evident that Wilson, the private investigator retained by Titus, would be unable to appear to testify.

As to the issue of prejudice, Titus argues Ardoin's representations to the Court undermined the basis for the motion to withdraw his plea. Titus argues there is a reasonable probability the Court would have reached a different conclusion had Ardoin arranged for the Court to hear Wilson's testimony concerning the Government's alleged assurances. Titus also argues the Court would have ruled differently in denying credit for acceptance of responsibility had Ardoin properly represented the basis for the motion to withdraw plea, to the extent the Court made statements concerning Titus's last-minute protestations of innocence in denying a three-level reduction in the offense level used to calculate his applicable sentencing guideline range. Finally, and apparently in the alternative, Titus argues a recent Supreme Court case undermines the Fifth Circuit's requirement of a showing of prejudice for ineffective-assistance claims premised on attorney-client conflicts of

interest. *See Christeson v. Roper*, No. 14-6873, 135 S.Ct. 891 (2015). Titus therefore requests that the Court vacate his conviction, allow a new hearing on his motion to withdraw plea, and hold a new sentencing hearing with different counsel.

### B. Litigation of the Forfeiture Provision

As to the forfeiture issue, Titus argues Ardoin made no effort to negotiate favorable application of the forfeiture clause in Titus's plea agreement despite alleged assurances by Ardoin that the clause's failure to identify specific property would afford such an opportunity over the course of the ensuing proceedings. Further, Titus argues Ardoin failed to contest the Government's amended forfeiture motion despite the Court's having granted a continuance on a conditional grant of that motion, which afforded the defense 30 days to respond. According to Titus, had Ardoin performed adequate investigation, he would have discovered a viable defense (that the subject property was not purchased with tainted funds) and there is a reasonable probability the property could have been saved.

Importantly, Titus argues Fifth Circuit precedent precluding litigation of claims unrelated to the custodial aspects of a defendant's sentence via a Section 2255 motion (*e.g.,* the forfeiture claims presently at issue) ought to be reconsidered and that, alternatively, if such claims are not properly litigated via 2255 motions, Titus's claim should be

treated as a request for a writ of error *coram nobis*. S*ee United States v. Segler,* 37 F.3d 1131, 1136-47 (5th Cir. 1995).

## IV. CONTENTIONS OF OPPONENTS

### A. Litigation of the Motion to Withdraw Guilty Plea

The Government counters that Ardoin's performance in litigating the motion to withdraw plea was not deficient and, in any event, Titus cannot meet his burden of showing prejudice under *Strickland*. As to the issue of performance, the Government contends the record reflects that Ardoin vigorously litigated Titus's claim of a secret side agreement with the Government. With respect to Titus's claims that Ardoin's October 5th letter to the Court "ambushed" his client at the sentencing hearing, the Government argues the entire letter, read in context, belies any such claim. According to the Government, Titus's only argument as to how Ardoin should have performed differently is that he should have insisted upon Wilson's appearance for live testimony on the allegations of a side agreement with the Government. However, because Titus cannot show any prejudice resulting from this failure, the Government contends Ardoin's performance in this respect is immaterial.

As to the issue of prejudice, the Government argues the Court simply did not credit Wilson's account regarding the secret side agreement, which account was embodied and presented to the Court in an affidavit submitted in connection with

Titus's motion to withdraw his plea. In light of the "overwhelming evidence" presented by the Government against the existence of any such agreement, the Government contends Titus is unable to show that Wilson's live testimony creates a reasonable probability that the result of the proceedings would have been different. *See Strickland*, 466 U.S. at 694. This evidence included:

> (1) Titus's sworn statement during his re-arraignment that no promises had been made to him other than those embodied in his written plea agreement,

> (2) the affidavits of several Assistant United States Attorneys who worked on the case denying the existence of any such agreement, and

> (3) evidence that Titus began transferring real property and engaging in structured transactions to move assets while avoiding reporting requirements following entry of his plea -- actions the Government characterizes as inconsistent with the expected behavior of someone who believed himself to have a no-forfeiture agreement with the Government.

In light of the above, the Government contends Titus is unable to satisfy the *Strickland* standard and that his ineffective-assistance-of-counsel claim is without merit as to the litigation of his motion to withdraw plea. To the extent

Titus argues he need not establish prejudice in the instant context, the Government argues this claim is incorrect and that, in any event, Fifth Circuit law requiring a showing of prejudice even in situations involving alleged attorney-client conflicts of interest remains binding on this Court unless and until the Fifth Circuit rules otherwise. *See Beets v. Scott*, 65 F.3d 1258, 1260 (5th Cir. 1995)(en banc).

### B. Litigation of the Forfeiture Provision

As to the forfeiture issue, the Government advances three arguments. First, the Government argues Titus waived his right to appeal or seek post-conviction relief concerning forfeiture issues in his plea agreement. Second, the Government claims challenges to forfeiture provisions are not properly litigated through Section 2255 collateral proceedings. And finally, the Government argues that even if Titus could challenge forfeiture under Section 2255, he cannot show deficient performance by counsel under *Strickland.*

### V. 28 U.S.C. § 2255

Section 2255 authorizes collateral attacks upon sentences and convictions by prisoners in federal custody:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or

that the sentence was in excess of the
maximum authorized by law, or is otherwise
subject to collateral attack, may move the
court which imposed the sentence to vacate,
set aside or correct the sentence.

28 U.S.C. § 2255(a). Under Section 2255, one basis for
challenging the validity of a prisoner's custody or sentence is
by way of a claim of ineffective assistance of counsel. *See
Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155
L.Ed. 2d 714 (2003). An ineffective-assistance-of-counsel claim
has two components: (1) the defendant must show that his
attorney's performance was deficient and (2) he must show that
he was prejudiced by that deficient performance. *Loden v.
McCarty*, 778 F.3d 484 (5th Cir. Feb. 13, 2015)(citing *Strickland
v. Washington*, 466 U.S. 668,687, 104 S.Ct. 2052, 80 L.Ed.2d 674
(1984)). To show deficient performance, the defendant must show
that counsel's representation fell below an objective standard
of reasonableness. *Reed v. Stephens*, 739 F.3d 753, 773 (5th Cir.
2014). Counsel's performance is judged based on prevailing norms
of practice, and judicial scrutiny of counsel's performance must
be highly deferential to avoid "the distorting effects of
hindsight." *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009).
To show prejudice, the defendant "must show that there is a
reasonable probability that, but for counsel's unprofessional
errors, the result of the proceeding would have been different."
*Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. "A reasonable

probability is a probability sufficient to undermine confidence in the outcome." *Id.*

## VI. DISCUSSION

### A. Litigation of the Motion to Withdraw Guilty Plea

#### 1. Deficient Performance

As noted above, Titus argues Ardoin performed deficiently in breaching his duty of loyalty; ostensibly in failing to move to withdraw his plea earlier in the proceedings and in sending a letter to the Court explaining the circumstances surrounding the filing of the motion. Additionally, Titus argues Ardoin should have moved to continue his sentencing hearing to ensure the availability for live testimony of the private investigator, Wilson.

As the record makes eminently clear, Titus entered a guilty plea pursuant to a written agreement with the Government that included express forfeiture language: "The defendant also agrees to forfeit any proceeds, profits or property received from his fraud of Garner Services, Limited." (Rec. Doc. 30 at 2). The agreement also included a so-called "merger" clause: "The defendant understands that the statements set forth above represent defendant's entire agreement with the Government; there are not any agreements, letters, or notations that will affect this agreement." (Rec. Doc. 30 at 4). At a re-arraignment

hearing on October 26, 2011, that plea agreement was presented

to the Court pursuant to the following colloquy:

> THE COURT: Did anyone promise you anything other than a written plea agreement with the government to plead guilty?
>
> MR. TITUS: No, sir.
>
> . . .
>
> THE COURT: Has your attorney or anyone else guaranteed to you a particular sentence?
>
> MR. TITUS: No, sir.
>
> . . .
>
> THE COURT: Counsel, Mr. Villalobos, or Mr. Ardoin, have you had sufficient time to consult with your client?
>
> MR. ARDOIN: We have, Your Honor.
>
> THE COURT: And do you agree with his decision to plead guilty?
>
> MR. ARDOIN: We do, Your Honor.
>
> THE COURT: Did you guarantee him any particular sentence?
>
> MR. ARDOIN: We did not, Your Honor.
>
> THE COURT: Mr. Titus, did you hear and understand what your lawyer told me just now?
>
> MR. TITUS: Yes, sir.
>
> THE COURT: Is everything he told me correct?
>
> MR. TITUS: Yes.

(Rec. Doc. 89 at 14-16)

MR. KENNEDY: And as I said before, it is a four-page document entitled or it encompasses all of the agreement between the Government, the United States, and the defendant, and I would offer it at this time.

. . .

THE COURT: Mr. Titus, did you go over these documents before signing them?

MR. TITUS: Yes, sir, Your Honor.

THE COURT: And when I say documents, I'm referring to the factual basis document and the plea agreement. Do you understand that?

MR. TITUS: Yes, sir.

THE COURT: Is everything in both of those documents true and correct?

MR. TITUS: Yes, it is.

THE COURT: Do you have any questions about anything in those documents?

MR. TITUS: No, sir.

(Rec. Doc. 89 at 17-18). Following the Court's acceptance of Titus's guilty plea, denial of the motion to withdraw plea, *supra*, and eventual imposition of sentence, Titus appealed to the United States Court of Appeals for the Fifth Circuit. That Court affirmed the denial of the motion to withdraw plea, finding the record supported the conclusion that Titus's plea was knowing and voluntary and further crediting this Court's

rejection of Titus's claims as to the alleged anti-forfeiture deal as likely fictitious.[1]

As noted above, the most tangible of Ardoin's failures alleged by Titus is in failing to seek continuance of Titus's sentencing hearing in order to ensure that Wilson would be available for live testimony on the issue of the alleged side agreement. Nevertheless, Ardoin submitted a sworn affidavit by Wilson as an attachment to the motion to withdraw plea. (*See* Rec. Doc. 58-2). That affidavit set forth the details of Wilson's involvement as an intermediary in initial discussions between Titus and the Government, including alleged conversations between Wilson and Assistant United States Attorneys Perricone and Mann concerning the Government's intention not to act on the forfeiture provision included in Titus's plea agreement.[2] Titus has failed to make any showing as

---

[1] See *United States v. Mark J. Titus*, No.12-31083 at 4 (5th Cir. Jan. 13, 2014)("The district court concluded that the plea was 'very expressed, very knowing, [and] very voluntary.' It did not err in so holding. Neither did it err in determining that Titus's secret plea deal was likely fictitious. In direct opposition to this later story of an anti-forfeiture deal, Titus told Judge Lemelle when pleading guilty that no one had promised him anything outside the written plea agreement. *Cf. United States v. Lampazianie*, 251 F.3d 519, 524 (5th Cir. 2001)("[s]olemn declarations in open court carry a strong presumption of verity")(alteration in the original).").

[2] These include statements such as:

> 18. In one conversation, Mr. Perricone stated to me that he was not interested in Titus' assets or forfeiture or hurting Titus' wife and children as all he cared about was "getting Heebe". He stated that he "dreamed of getting Heebe and all the politicians that Heebe paid off."

> 19. I had another conversation about Titus' concerns about the forfeiture provisions in the plea agreement in which both AUSA Perricone and AUSA Mann each assured me that the Government would not

to how Wilson's live testimony -- which, assuming it were entirely consistent with the sworn statements in his affidavit, would have been, at most, redundant -- would in any way have altered the outcome of the proceedings. Weighed against the substantial contrary evidence submitted by the Government, the Court cannot say that Ardoin's performance fell below an objective standard of reasonableness in failing to seek a continuance for purposes of allowing Wilson to testify.

As to Titus's claim that Ardoin's failure to raise the issue of the alleged side agreement earlier in the proceedings, the Court finds these claims to be unworthy of credit. To suggest that Ardoin was aware of the alleged side agreement at the outset of his representation and failed to raise issues relating thereto for over a year would require the Court to conclude that Ardoin misled the Court through his statements at Titus's re-arraignment concerning the absence of any agreements aside those embodied in the written agreement and further allowed his client to perjure himself in making similar

---

execute or act on that provision. Their assurances confirmed for me the Government's [sic] had no intent to pursue actual forfeiture despite language to the contrary in the plea agreement.

21. Based on those statements by the Government, I represented to Titus what had been said to me by the Government. Those representations by the Government that there would be no forfeiture were material inducements to get Mr. Titus to agree to the deal. Based upon those inducements, I recommended that Titus go forward with the cooperation and plea agreements which I had helped negotiate.

(Rec. Doc. 58-2 at 2-3).

representations. It would additionally necessitate the conclusion that Ardoin's statements in his letter to the Court prior to the sentencing hearing explaining the late filing of the motion to withdraw the plea were equally dishonest. However, because the Court recognizes that these inferences constitute the basis for Titus's argument that Ardoin labored under a conflict of interest, we may assume for present purposes that the failure to raise the issue earlier in the proceedings did indeed amount to deficient performance. (Although this requires the Court to assign a level of credibility to Titus and Wilson that is simply not warranted by the record). Because Titus has failed to establish prejudice therefrom, however, such a conclusion has no bearing on the merit of his ineffective-assistance claim.

### 2. Prejudice

As discussed above, assuming Ardoin's performance was deficient in litigating the motion to withdraw Titus's guilty plea, Titus still bears the burden of establishing prejudice therefrom.[3] This requires Titus to establish a "reasonable probability that, but for counsel's unprofessional errors, the

---

[3] The Court rejects without further discussion Titus's claims that the prejudice requirement is obviated in instances of alleged attorney-client conflicts of interest. The law is settled on this issue in the Fifth Circuit and it is not this Court's pleasure to re-visit any such holdings. *See Beets v. Scott*, 65 F.3d 1258, 1265 (5th Cir. 1995)(en banc)("The position adopted by the court *en banc* may be easily summarized. *Strickland* offers a superior framework for addressing attorney conflicts outside the multiple or serial client context.")

result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052. Thus, the relevant inquiry is whether, had Ardoin moved to withdraw Titus's guilty plea earlier in the proceedings and/or insisted on the live testimony of Wilson, there is a reasonable probability that the Court would have allowed him to withdraw his plea and/or imposed a different sentence. For numerous reasons, the answer is no.

First, as discussed above, the record clearly reflects that Titus entered a knowing and voluntary plea. There is further no dispute that he affirmed the veracity of the contents of his plea agreement and the absence of any other agreements both orally before the Court and in affixing his signature to the plea agreement. Additionally, the Government presented numerous affidavits denying the existence of any side agreements regarding forfeiture. (See Rec. Docs. 61-1, 61-2, 61-3, 61-4, 61-5). Finally, and most infelicitous for Titus, is his own conduct following entry of his guilty plea.

The record reflects that in the interim between Titus's pleading guilty and sentencing, the Government moved, on October 9, 2012, for an order to show cause why his bond should not be revoked. (Rec. Doc. 52). That motion was heard before Magistrate Judge Chasez on August 15, 2012. (Rec. Doc. 55). Although Judge Chasez did not ultimately have an opportunity to rule on the pending motion to revoke bond before this Court imposed

sentence, a record was developed of the hearing on that motion and both sides had opportunity to present post-hearing briefing on the issue. (See Rec. Docs. 55, 56, 57). Collectively, these reveal that shortly after the entry of his plea, Titus engaged in a practice of making regular withdrawals (in the form of checks written to himself and his wife) in amounts just below the $10,000 limit above which banks are required to file a currency transaction report ("CTR") with the IRS. (See Rec. Doc. 55 at 17-23). Although Titus contested the Government's having established his knowledge of the reporting standards so as to satisfy the *mens rea* component of the anti-structuring statute, 31 U.S.C. § 5324(a)(3), the facts speak for themselves and the pattern of withdrawals clearly served, at the very least, to undermine Titus's credibility as to any claims that the Government had promised not to pursue forfeiture of his assets. Indeed, testimony at the hearing on the motion to revoke bond revealed that Titus met with FBI Forfeiture Investigators at the outset of the investigation into Garner Services and continuing past entry of his plea.[4] The record reflects that on November 2,

---

[4] See Rec. Doc. 55 at 30 (Cross-Examination of Forfeiture Investigator, Paul Duplessis, by James Ardoin):

> Q. You stated on direct that you started trying to look at Mr. Titus' assets to identity assets for forfeiture. Now can you tell me when exactly you started doing that?
> A. I started looking for assets almost as soon as I got involved in the investigation.
> Q. Which that was May of 2011?
> A. That would have been – yeah, about – yeah, that's about right.

2011, Titus opened a new bank account into which a sum (the legality of the source of which is not in issue) was deposited and from which the structured transactions were withdrawn. (Rec. Doc. 55 at 16). This account was opened a mere seven days after Titus's entry of his plea and the structured transactions began as early as January 6, 2012 -- approximately two months after the plea. (Rec. Doc. 55 at 16). The near immediacy of his undertaking such activity belies any potential claim by Titus that he entered the plea under the initial impression of an intact no-forfeiture agreement with the Government.

Because Titus affirmed the veracity and exclusivity of the contents of his plea agreement under oath before this Court at the time of his re-arraignment, because his conduct following entry of his plea was patently inconsistent with any claim of a secret anti-forfeiture side agreement with the Government, and finally because the sworn affidavits of the Assistant United States Attorneys involved with the matter patently contradict such a claim, Titus has made no showing that an earlier motion to withdraw his plea, or the presentation of Wilson's live testimony premised on the existence of such an agreement, would in any way have altered the outcome of the proceedings on the motion to withdraw plea. Accordingly, he cannot satisfy the

---

Q. That was prior to any plea, prior to any plea agreement and prior to any – in fact isn't it true you went and interrogated Mr. Titus at his place of business or visited him at his place of business, that true?
A. Yes.

prejudice requirement of *Strickland* and his ineffective-assistance claim is without merit.

## B. Litigation of the Forfeiture Provision

### 1. Section 2255 Habeas Proceedings

Titus also contests the judgment of forfeiture entered against him, alleging that Ardoin's constitutionally deficient performance in litigating the forfeiture provision of his plea agreement caused him prejudice. Because the Court concludes that such an issue is not properly raised in collateral proceedings under Section 2255, it has occasion to address neither Titus's arguments under *Strickland*, nor the Government's arguments pertaining to the validity of the waiver provision contained in Titus's plea agreement.

*In United States v. Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994), the Fifth Circuit held:

> When a prisoner asserts an ineffective assistance of counsel claim under § 2255, he must satisfy *Strickland's* prejudice requirement by showing harm that relates to his custody. That is, if counsel's constitutionally insufficient assistance affected the trial court's guilt determination or the sentencer's imposition of a prison term, a prisoner's ineffective assistance of counsel claim falls within the scope of § 2255.

By contrast where, for example, the prisoner's claim relates only to a fine, as was the case in *Segler*, "his claim falls outside § 2225." *Id.* Limiting § 2255's application to the

custodial aspects of a prisoner's sentence, reasoned the Fifth Circuit, "promotes even-handed treatment of similar Sixth Amendment claims. A convicted defendant who receives an allegedly erroneous fine because of constitutionally inadequate assistance of counsel cannot seek post-conviction relief under § 2255, and neither should a petitioner who is both fined and imprisoned have an opportunity to assert an identical fine-related claim under § 2255." *Segler*, 37 F.3d at 1137 (internal citations omitted). Subsequently, a number of district courts within the Fifth Circuit have applied *Segler* to instances such as the present where the petitioner seeks to challenge the forfeiture aspect of his sentence. *See, e.g., Neill v. United States*, 2011 WL 817190, at *5 (E.D. Tex. Jan. 12, 2011), *report and recommendation adopted by* 2011 811706 (E.D. Tex. Mar. 2, 2011); *Gasanova v. United States*, 2007 WL 2815696, at *8 (W.D. Tex. Sep. 6, 2007). This tack has also been approved by the Fifth Circuit in an unpublished opinion. *See United States v. Banguera*, 62 F.3d 393, 1995 WL 449891, at *1 (5th Cir. Jun 30, 1995). ("Section 2255 is limited to claims relating to unlawful custody. *United States v. Segler*, 37 F.3d 1131, 1136-37 (5th Cir. 1994). Because Banguera is challenging only the forfeiture of assets, which does not go to the validity of his conviction or sentence, his claim is not cognizable under § 2255.").

The custodial distinction has also been applied in the First, Second, Seventh, Ninth, and Eleventh Circuits to prevent Section 2255 challenges to restitution orders. *Kaminski v. United States*, 339 F.3d 84, 88-89 (2d Cir. 2003)(adopting the *Segler* rationale to prevent non-custodial challenges even where coupled with custodial challenges); *United States v. Kramer*, 195 F.3d 1129 (9th Cir. 1999); *Blaik v. United States*, 161 F.3d 1341, 1342-43 (11th Cir. 1998)(on reh'g); *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997); *Smullen v. United States*, 94 F.3d 20, 25 (1st Cir. 1996); *accord*, *Winkelman v. United States*, 494 Fed. App'x 217, 220, n.4 (3d Cir. 2012), *cert. denied*, 133 S.Ct. (2012).

The law is thus settled and clear that a petitioner such as Titus may not challenge the forfeiture aspect of his sentence via a motion brought under § 2255. Accordingly, the Court has no further occasion to analyze the issue under the auspices of a claim of ineffective assistance of counsel.

## 2. Petition for Writ of Error *Coram Nobis*

The Court writes briefly to note that a prisoner subject to both custodial and non-custodial sentencing terms is not without recourse to challenge the validity of the latter. He may, by complying with applicable procedures, challenge the non-custodial term on direct appeal (which Titus failed to do here), or, under extraordinary circumstances, he may raise the claim by

way of a petition for writ of error *coram nobis*. *See Barnickel v. United States*, 852 F.2d 199 (7th Cir. 1988). Nevertheless, such a writ will not issue as to claims that could have been raised on direct appeal. *Id*. Accordingly, Titus has no basis to petition the Court on *coram nobis* grounds in these proceedings.

### C. Evidentiary Hearing

For the reasons discussed above, Titus has made no showing as to the likely merit of his ineffective-assistance claim. *See United States v. Cavitt*, 550 F.3d 430, 442 (5th Cir. 2008)(petitioner must establish independent indicia of the likely merit of his allegations to warrant holding evidentiary hearing). Nothing suggests that he would be able to establish the existence of an alleged side-agreement with the Government by way of any evidence or argument he has not already effectively raised before this Court.[5] He is further precluded by law from challenging forfeiture in the instant proceedings. Accordingly, there is no basis to hold an evidentiary hearing on his § 2255 Motion.

### VII. CONCLUSION

---

[5] The Court notes that Titus has attached excerpts of oral testimony given by Tim Wilson in related proceedings in another section of this Court. (See Rec. Doc. 249-8). That testimony, however, merely reiterates the general facts stated in Wilson's affidavit which was presented to the Court simultaneously with Titus's motion to withdraw his plea, (and as discussed above is contrary to the weight of the evidence) and in no way serves as an independent indicium of the likely merit of his allegations here.

Because Titus has not satisfied either element of the *Strickland* standard as to his ineffective-assistance claim relating to the litigation of the motion to withdraw plea, and further because he may not challenge the forfeiture provision of his sentence by way of a motion brought under § 2255, **IT IS ORDERED THAT** his Motion to Vacate (Rec. Doc. 249) is **DENIED.**

Because there is no basis to warrant hearing of additional evidence, **IT IS FURTHER ORDERED THAT** Titus's Motion for Evidentiary Hearing (Rec. Doc. 250) is **DENIED.**

New Orleans, Louisiana, this 14th day of May, 2015.


_____
UNITED STATES DISTRICT JUDGE